Gary Kinsell, by His Father and Next Friend, Dwayne Kinsell, and Dwayne Kinsell, Plaintiffs-Appellants, v. Jon Hawthorne, Defendant-Appellee.

Gen. No. 10,296.

Third District.

October 20, 1960.

Costigan, Wollrab, and Yoder, of Bloomington, for appellants.

William J. Bach, of Bloomington (William J. Bach and Keith E. Fry, of counsel) for appellee.

ROETH, JUSTICE.

This action was commenced in the Circuit Court of McLean County by Dwayne Kinsel as father and next friend of Gary Kinsel, his son, to recover damages for injuries sustained by his son when struck by a motorcycle driven by defendant, and by Dwayne Kinsel individually to recover medical expenses incurred by him in treating his son. The jury returned a verdict finding defendant guilty and assessing the damages of plaintiffs, Gary Kinsell by his father and next of friend Dwayne Kinsell, and Dwayne Kinsell, at $4,000.00. Plaintiffs filed a post trial motion, which was denied. They appeal from the judgment entered on the verdict and pray (1) that the cause be reversed and remanded

solely for purpose of a new trial on the question of damages, or in the alternative, (2) for a new trial as to all issues. Plaintiffs contend that the damages are grossly inadequate and that the trial court erred in giving certain instructions tendered by the defendant which materially affected the jury's verdict.

At the outset of a consideration of the issues presented to this court, it should be noted that counsel for defendant concede, and make the following statement in their brief and argument:

> "It is apparent that the amount of the verdict was a result of a compromise on the question of liability."

The evidence reveals that defendant, 16 years old at the time of the accident, was driving a motorcycle with his 14-year old cousin riding on the seat behind him. They left the village of Saybrook and drove out into the country to see the defendant's girl friend, stayed a few moments and returned to Saybrook along the same route. They proceeded into town from the South. The intersection where the occurrence happened is a T crossing with Jackson Street coming in from the west and dead ending at East Street, the street upon which the defendant was driving. East Street at the point of the occurrence is a narrow street with the blacktop pavement only 13 feet 7 inches wide and without curbing with grass shoulders extending several feet east and west of the blacktop. About 150 to 200 yards south of the T intersection, East Street curves sharply to the east. There are two homes situated south of the intersection, one on the west side and one on the east side of East Street. The village limits of Saybrook are at a point near the curve south of the intersection.

■■ Defendant testified that he drove the motorcycle up to the curve at about 35 to 45 miles an hour

and out of the curve up to the intersection at 25 to 30 miles an hour. His passenger testified he drove around the curve at 45 to 50 miles an hour and reduced his speed to 20 to 30 miles an hour at the intersection. A witness for plaintiff stated he estimated defendant's speed to be 30 to 40 miles an hour at the intersection. Defendant testified that when he entered the intersection he saw plaintiff and another boy approximately 50 feet to his north standing near a tree on the east side of East Street. The tree is located north of the intersection and lies some 8 to 10 feet east of the paved portion of East Street. Defendant testified that he sounded his horn when he saw the boys and immediately thereafter the two boys ran across East Street, in a northwesterly direction, with plaintiff about 5 feet ahead of the other boy. Defendant testified he applied his brakes and turned to the left in a northwesterly direction, the direction in which the boys were running. Skid marks in the road after the occurrence show that defendant skidded from a point 7 feet 6 inches from the east edge of the blacktop portion of the road and 38 feet north of the intersection to a point 1 foot from the west edge of the road and said skid marks measured 36 feet 7 inches. The plaintiff was struck by the motorcycle when he was within 1 or 2 feet of the west edge of the blacktop, having run in a northwesterly direction almost entirely across the road. The testimony is conflicting only as to the speed the defendant was traveling when he first saw plaintiff enter the intersection and the only obstruction to his vision prior to entering the intersection was an automobile parked facing east in a driveway on the property lying directly east of the intersection, the rear end of said automobile being approximately 6 feet from the paved portion of East Street. It would thus appear that defendant could have avoided the accident had he driven his motorcycle straight ahead or turned to

317

the east rather than the west. This does not, however, lead to the conclusion that defendant was guilty of negligence as a matter of law. Whether or not he was negligent was a question of fact for the jury to resolve and they in fact resolved this against him.

■ The same can be said regarding the question of due care on the part of the plaintiff. This was a country road and the testimony established that there was very little traffic along the street, only an average of one car per hour. This coupled with the tender age of the plaintiff, plus his position in the road at the time he was struck, make the question of his due care a question of fact to be determined by the jury. The jury, of course, resolved the question of his due care favorable to him.

The injuries suffered by the plaintiff were severe. The medical testimony was undisputed. The most serious injury sustained by plaintiff was the loss of 98% vision in his left eye, which injury caused the eye to turn inwardly. An operation was subsequently performed to straighten the eye but the medical testimony established that the loss of vision is permanent. The testimony also showed that further operations may be necessary on the eye in an effort to keep it from crossing and that this condition of crossing could reoccur. Successive operations might be performed but only to a certain point, after which further surgical intervention would not be advisable. The testimony also established that prior to the accident plaintiff's vision in that eye was the normal 20–20.

In addition to this injury plaintiff suffered a 2 inch cut on the right side of his scalp and the initial examination showed tire marks along the left side of his face. He was gray and pale and showed evidence of shock and suffered multiple abrasions of the arm, shoulder and back. He sustained a fracture of the right

318

collar bone and his right lung was collapsed. He received blood transfusions and fluid in the veins and the air was removed from his chest cavity. He spent a total of six days in the hospital after the accident. He subsequently spent further time in the hospital as a result of the operation on his eye. The lungs were bruised by the collapse and a certain amount of scarring tissue formed on the lungs. The cut on his head required five sutures and he suffered a concussion with some amnesia. There is testimony also in the record to indicate that the plaintiff has suffered a personality change as the result of the accident. The total amount of expenses incurred for the medical care of the plaintiff was $855.41.

██ ██ It is the law in Illinois that a verdict should be set aside and a new trial granted for inadequacy of damages where it is clear that injustice has been done, or where it is obvious that a jury failed to take into consideration proper elements of damage which are clearly proven, or where it is apparent that the jury made a compromise between the guilt of the defendant and the damages sustained by a plaintiff. 28 I. L. P., New Trial, Sec. 29; Montgomery v. Simon, 309 Ill. App. 516, 33 N.E.2d 642; Luner v. Gelles, 314 Ill. App. 659, 42 N.E.2d 313; Browder v. Beckman, 275 Ill. App. 193. In the case at bar, as heretofore noted, counsel for defendant concede that the verdict was the result of a compromise by the jury. Such a verdict, although not nominal, stands on no firmer foundation than a nominal one would. No post trial motion was filed by defendant so that it may be assumed that they regard the verdict as a victory for defendant. However, if defendant was not guilty of negligence he should not be required to pay any damages. By the same token if he was guilty, the plaintiff was entitled to a fair allowance of damages taking into considera-

tion all elements which are to be considered. Based upon those elements we do not agree that the allowance made in this case is fair.

The cases relied upon by defendant, namely, O'Malley v. Chicago City R. Co., 33 Ill. App. 354, and Isley v. McClandish, 299 Ill. App. 564, 20 N.E.2d 890, are cases wherein it was held that a plaintiff not entitled to recover at all has no right for any reason to have a verdict in his favor set aside because the damages awarded were less than the pecuniary injury. We cannot say that such a situation is present in the record before us.

■ Counsel for plaintiff ask for a reversal and remandment for new trial solely on the question of damages. We are not justified in ordering a new trial on the issue of damages alone where it appears that the damages awarded were the result of a compromise on the question of liability.

■ Counsel for plaintiff complain of the giving of defendant's instructions 1, 4 and 12 dealing with the negligence of the parties. While there may be merit to the contentions made, it is the rule that in a personal injury action the giving of erroneous instructions on the right of a plaintiff to recover are harmless where the jury found that issue for him. Borgerson v. Chicago Rys. Co., 187 Ill. App. 65; Browder v. Beckman, 275 Ill. App. 193.

Accordingly the judgment of the Circuit Court of McLean County will be reversed and the cause remanded for a new trial.

Reversed and remanded.

CARROLL, P. J. and REYNOLDS, J., concur.