WILLIAM RAITHEL, Plaintiff-Appellee and Cross-Appellant, v. DUSTCUT-TER, INC., Defendant-Appellant and Cross-Appellee (Three Point Tavern, Inc., Defendant).

Fourth District  No. 4—93—0875

Opinion filed May 20, 1994.

COOK, J., specially concurring.

Robert L. Ellison, of Klockau, McCarthy, Ellison & Marquis, of Rock Island, for appellant.

Mike McElvain, of Law Office of Mike McElvain, of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

In an action to recover damages for personal injury under section 6—21 of the Dramshop Act (Act) (Ill. Rev. Stat. 1991, ch. 43, par. 135), a jury returned a verdict in favor of plaintiff in the amount of $47,764.64. The trial court granted plaintiff's motion for a new trial, finding the damages awarded were manifestly inadequate. The new trial was limited solely to the issue of damages, and the jury in this new trial awarded $86,862 in damages. The court entered judgment for $30,000, the statutory maximum for personal injury under the Act. On appeal, defendant contends the trial court erred in (1) limiting the new trial to the issue of damages only; and (2) admitting into evidence a treating physician's testimony regarding a blood-alcohol test performed on plaintiff. Plaintiff cross-appeals, claiming the trial court erred in reducing the award to $30,000. We affirm.

Plaintiff was injured in a one-car automobile accident on May 4, 1990. The driver of the vehicle, Charles Rongey, began drinking at the Dustcutter Tavern (Dustcutter) in Bloomington, Illinois, at 7:45 a.m. and stayed until 3:15 p.m. when plaintiff arrived. Rongey estimated he drank between 10 and 20 beers. When plaintiff arrived, Rongey gave him money and asked him to get them a drink. Plaintiff drank three-quarters of a mixed drink before he and Rongey decided to drive to Havana, Illinois, to go fishing. Plaintiff went home to bathe and change clothes. Soon after, Rongey picked him up at his home and they drove 45 minutes to the Three Points Tavern (Three Points) on Route 136. They ate sandwiches, had a drink, and left about 5:30 p.m. Sometime afterward, Rongey fell asleep at the wheel and the truck ran off the road, severely injuring plaintiff.

Plaintiff testified that Rongey did not appear intoxicated at any time on the day of the accident. Rongey testified he was drunk at the time of the accident, because police cited him for driving under the influence of alcohol. However, he admitted signing a statement on December 20, 1990, claiming he did not think he was drunk at any time on the date of the accident. The jury returned a verdict in favor of Three Points and against Dustcutter.

In its post-trial motion, Dustcutter urged the trial court to order a new trial on all issues. The trial court refused, finding that issues of damages and liability were adequately separate and distinct, and that evidence on liability amply supported the verdict. On appeal, defendant contends that the jury's award was the result of a compromise on the question of liability and a new trial should be granted on all issues.

Defendant cites *Kinsell v. Hawthorne* (1960), 27 Ill. App. 2d 314, 169 N.E.2d 678, for the principle that a new trial should not be awarded on damages only, where it appears the damages awarded were the result of a compromise on the question of liability. (*Kinsell*, 27 Ill. App. 2d at 320, 169 N.E.2d at 681-82.) Defendant portrays the liability issue in this case as hotly contested. He points out that conflicting evidence was heard establishing whether Rongey was actually intoxicated. The jury was also instructed on the affirmative defense of complicity. Plaintiff conceded he drank alcohol with Rongey at both taverns. The jury was instructed that plaintiff could not recover damages if it found that he had voluntarily participated, to a material and substantial extent, in the drinking which led to Rongey's intoxication. Finally, defendant points out the fact that the jury found in favor of Three Points and against Dustcutter. This, defendant argues, is further proof of a compromise verdict.

At the first trial, plaintiff testified on direct examination that his medical bills totaled approximately $63,000. Plaintiff's counsel then asked him if it was true that all but $15,000 of this had been paid. Plaintiff agreed with the statement. During deliberations, the jury sent a note asking whether it should award $63,000 or $15,000 for medical damages. The trial court replied that it had all the evidence and instructions it needed and should continue deliberations. The jury awarded $15,000 for medical expenses as part of a total award of $47,764.64. After the second trial, the jury awarded the full $63,000 in medical expenses as part of a total award of $86,862. The difference between the two awards is approximately $39,000. Clearly, this difference is primarily the result of the jury's confusion over the amount of medical expense it should properly award—a situation created, we note, by plaintiff's own testimony on direct examination. The only other difference between the two awards is the fact that the first jury awarded $21,500 for pain and suffering, whereas the second jury awarded only $12,500 on this issue.

A new trial limited to a question of damages is appropriate where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of

damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict nor that, in some identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability. *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 456, 394 N.E.2d 391, 393.

■ We find no indication of a compromise verdict in this case. The difference in the amount of the two jury awards is easily explained by the jury's confusion over medical expenses. Nor do we view the verdict in favor of Three Points as evidence of a compromise verdict. Rather, the jury's decision is most probably due to the fact that Rongey consumed only one drink at this establishment. In sum, the jury's verdict was amply supported by the evidence; questions of liability and damages were separate and distinct; and we find no evidence of a compromise verdict, nor any indication that the error causing the inadequate award affected the verdict or the question of liability. We find no error in the trial court's decision to limit issues in the new trial to damages only.

■ Next, defendant contends the trial court erred in admitting into evidence, over defendant's objection, testimony regarding a blood test performed on plaintiff sometime after the accident. Dr. Charles Montgomery, plaintiff's treating physician, was deposed prior to trial and his deposition was read to the jury. At the evidence deposition, plaintiff's counsel asked Dr. Montgomery on redirect examination whether any laboratory tests were performed to determine alcohol levels in plaintiff's system. Dr. Montgomery replied that such a test was performed and the result was negative. He added that the lab test was routine. Defense counsel objected to this testimony at the deposition, and at trial, claiming insufficient foundation. The trial court ruled that evidence of the blood test, while not admissible as substantive evidence, was admissible as part of the material relied upon by the doctor in his treatment of plaintiff. The jury was instructed not to consider the blood test as evidence, and that the test was only admitted for the limited purpose of allowing it to weigh and evaluate the opinions of the witness.

Defendant contends there was strong evidence of plaintiff's complicity in Rongey's drunkenness. Two paramedics testified they smelled liquor on plaintiff's breath immediately after the accident. The fact he had been in Rongey's company for the last $2^{1}/_{2}$ hours prior to the accident further supports defendant's theory of complicity. Defendant contends that its complicity defense was prejudiced by allowing the jury to hear evidence of a negative blood-alcohol test. Plaintiff responds that this test, and its result, was just one of many

the doctor listed in discussing plaintiff's treatment. Furthermore, plaintiff argues that the jury was informed through depositions of the paramedics that intravenous fluids were administered hours before the blood-alcohol test.

The trial court relied upon *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, for the principle that it is unnecessary for hospital records to be admitted into evidence in order to elicit an expert medical opinion. (*Wilson*, 84 Ill. 2d at 192, 417 N.E.2d at 1326.) In the case at hand, Dr. Montgomery expressed no expert opinions regarding the blood test. His deposition offers no clue as to the significance of the blood test, nor does he state the manner in which he relied upon the test in his treatment of plaintiff. No attempt is made to explain the relevance of the blood-alcohol test. The *Wilson* decision refers to expert opinions based upon facts not admitted into evidence. We have no expert opinion here and, accordingly, the *Wilson* decision has no relevance to this case.

Admission of medical-record evidence is governed by Supreme Court Rule 236, which was recently amended to include medical records under the business-record exception to the hearsay rule. (145 Ill. 2d R. 236.) Any document admissible under this exception must first be authenticated by proper foundation. *People v. Turner* (1992), 233 Ill. App. 3d 449, 453, 599 N.E.2d 104, 108.

We find the trial court erred in admitting into evidence testimony of the blood-alcohol test without the requisite foundation. However, we are not convinced that defendant suffered any prejudice as a result of this error. Complicity is not predicated upon plaintiff's contribution to his injury, but only upon his contribution to the inebriate's intoxication. Only one who actively contributes to or procures the intoxication of the inebriate is precluded from recovery. (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 543, 372 N.E.2d 637, 641.) Evidence clearly indicates the vast majority of Rongey's inebriation was procured while plaintiff was still at work. Evidence is uncontroverted that Rongey had been drinking for over seven hours before joining up with plaintiff. Plaintiff shared only two drinks with Rongey, and there is no evidence that he ever purchased alcohol for him. We find evidence of complicity to be minimal, and Dr. Montgomery's mention of a routine medical test did little harm to defendant's case.

■ Finally, plaintiff cross-appeals, claiming the trial court erred in reducing the damage award, where a total of $86,862 was awarded by the jury. Plaintiff had already received $50,000 from Rongey in a separate action, and that amount was set off against the jury's award, leaving $36,862. The trial court reduced this amount to $30,000, the statutory maximum for a personal injury award under the Act. (See

Ill. Rev. Stat. 1991, ch. 43, par. 135(a).) The Act also provides a separate $40,000 statutory limit for loss of means of support. Plaintiff points out that wording of the statute allows *any* person to make separate claims for personal injury, property damage, and loss to means of support. Accordingly, plaintiff contends he should be able to claim his lost wages, which total approximately $11,000, under the separate category of loss of means of support.

Whether a claimant may use his or her lost wages as a claim for loss of his or her own means of support is a question we need not address in this case. Plaintiff's complaint contains no reference to any injury as a result of loss to means of support. Each separate cause of action upon which a separate recovery might be had shall be stated in a separate count. (Ill. Rev. Stat. 1991, ch. 110, par. 2—603(b).) The trial court properly reduced the award to the statutory limit of $30,000.

Affirmed.

McCULLOUGH, P.J., concurs.

JUSTICE COOK, specially concurring:

The majority holds the trial court erred in admitting the blood-alcohol test as a business record without the requisite foundation. At one time medical records could not be admitted under the business record exception to the hearsay rule, but that prohibition was eliminated in 1992. (145 Ill. 2d R. 236.) For foundation it is not necessary that the preparer of the records testify, or that the preparer be shown to be unavailable. (*People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 559-60, 575 N.E.2d 568, 580.) Nor is it necessary that the custodian of the records testify. All that is required is that someone familiar with the business and its mode of operation testify at trial as to the manner in which the record was prepared. (*Preski v. Warchol Construction Co.* (1982), 111 Ill. App. 3d 641, 650, 444 N.E.2d 1105, 1111.) Anyone familiar with the business and procedure may testify as to the records. (*Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 407, 487 N.E.2d 798, 806.) A doctor with privileges at a hospital may be sufficiently familiar with some hospital records to testify to their introduction.

Dr. Montgomery's use of tests taken by the hospital may also be compared to the use by one business of information gathered by another business. A business can prove up records of another business which it has in its possession if it verified those records (2 McCormick on Evidence § 292, at 278 (4th ed. 1992)) or commissioned them (*Ar-*

*gueta v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1991), 224 Ill. App. 3d 11, 21, 586 N.E.2d 386, 392). Testimony of the business receiving the information is sufficient when that business, acting in regular course, integrates the information received into its own records, relies on the information in its day-to-day operations, and surrounding circumstances indicate trustworthiness. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.10, at 651 (5th ed. 1990).

Dr. Montgomery treated plaintiff at St. Francis Hospital. Dr. Montgomery was allowed to testify that the admitting notes of the hospital indicate that fluids were drawn for testing on May 4, 1990, at 10:42 p.m., and that the fluids tested negative for blood-alcohol. Whether or not Dr. Montgomery relied on that test in treating plaintiff, it seems clear that the doctor could have relied on the test, and would have relied upon it if there was any reason for doing so. The test here so clearly was what it purported to be that the burden of showing otherwise should rest on the party opposing admission. There is no justification in this case for requiring that some other witness be called, who may have known less about the test than the doctor.

Defendant argues that plaintiff's blood-alcohol level at 10:42 p.m. is not relevant, and the only relevant level was the level at the time of the accident, some four hours earlier. That objection, however, goes to weight and not to admissibility. The trial court could properly have allowed the test to come in for what it was worth. In any event, I agree with the majority that defendant was not prejudiced by the limited admission of the test here.