FIRST DIVISION

DECEMBER 21, 1998

No. 1-97-2885

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

CARL VIRGIN, JR.,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

 

Honorable

Dennis Dernbach,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court: 

Defendant Carl Virgin, Jr., was convicted by a jury of possession of a controlled substance with intent to deliver and sentenced to 10 years in prison.  On appeal, we address the following issues:  (1) whether the admission of hearsay evidence denied defendant his right of confrontation; (2) whether comments made by the trial judge denied defendant his right to a fair and impartial jury; and (3) whether the trial court correctly imposed consecutive sentences because defendant committed a subsequent offense.

We reverse and remand this cause and find that the cumulative effect of the improperly admitted hearsay evidence denied defendant a fair trial.

FACTS

On March 24, 1995, Chicago police executed a search warrant for the premises at 7215 S. Claremont.  Under the warrant, police were searching for cocaine, United States currency, drug paraphernalia and proof of residency.  In addition, the warrant contained a description of a person to search for:  a male black, 18 to 20 years old, approximately 5 feet 6 inches tall, weighing about 135 pounds, and having a light complexion.  At trial, the State and the defense presented two very different versions of the events leading up to defendant's arrest.

The State's witnesses related the following version of events:  On March 24, 1995, several officers arrived on the scene, including Officers Thoren and Washington, who testified at trial.  They proceeded up the rear stairs to the second floor, where the apartment to be searched was located.  Another two to four officers were stationed outside the residence and in the backyard.  While standing outside the rear entrance to the apartment, the officers stated they heard a commotion inside the apartment. When the occupants of the apartment did not respond to the officers banging on the door, the police elected to make a forced entry.  Officers Thoren and Washington were the first to enter the apartment.

After the officers entered the apartment, they observed defendant, with long braids and wearing a light-colored, long-sleeved shirt, blue jeans and gym shoes, coming out of the bedroom.  Officer Thoren announced she was a police officer and had a warrant, and she and Officer Washington chased the person down a stairwell into the first-floor apartment.  

Defendant then ran through the first-floor apartment, jumped out a window and into an alley which ran along the side of the building.  The officers testified that they were able to see a profile of defendant's face throughout the chase and that he made eye contact with them prior to jumping out the first-floor window.

Officers Thoren and Washington then returned to the second-floor apartment and went through the door out of which defendant had run.  The room appeared to be a bedroom, and officers observed numerous pieces of a rock-like white substance on a table in the room.  They also discovered a bag containing a leafy green substance, a police scanner, a cellular phone, multiple plastic baggies, a crack pipe, a small electronic scale and $130 in cash.  In addition, the officers found two documents bearing the name of Carl Virgin from the City of Chicago's bureau of parking.  The room also contained piles of men's clothing in bags and on the floor, and officers discovered a puppy which appeared to be ill or malnourished.  Finally, officers found a woman hiding under some clothing and placed her under arrest.  She was later identified as Marilyn Williams. 

The officers brought Carl Virgin, Sr., an occupant of the second-

floor apartment, to the police station for questioning.  As the officers were leaving the apartment, defendant appeared on the second-

floor porch and asked the officers why they were taking his dog.  He came down the stairs and approached the officers, who recognized him as the man who had fled from the apartment earlier, except he no longer had braids and he had changed his clothing.  When the officers inquired as to defendant's name and address, he replied that his name was Carl Virgin and he lived on the second floor of 7215 S. Claremont.  As the officers told defendant he was going to be arrested, defendant backed away and into a garage window, cutting his hand.  He was then transported to the police station. 

The stipulations were as follows:  (1) the chain of custody for the white, rock-like substance was at all times proper; (2) if called, an expert would testify the white substance recovered from the second-

floor apartment was cocaine and weighed 27.10 grams; (3) the chain of custody for the crushed green leafy substance was at all times proper; and (4) if called, an expert would testify the green substance recovered from the second-floor apartment was marijuana and weighed 4.78 grams.  

The defense witnesses, Carl Virgin, Sr., and defendant's cousin, Jantae Virgin, testified as to the following version of events:  On March 24, 1995, police came to 7215 Claremont and broke down the door.  The officers searched the bedroom which Carl Virgin, Sr., testified Marilyn Williams rented from him.  Carl Virgin, Sr., testified that defendant Carl Virgin, Jr., was not in the second-floor apartment at the time of the search, nor did he live in that apartment.  Both defense witnesses testified that the windows of the first-floor apartment were painted shut and did not open all the way.

At the time the police conducted the search, the apartment contained three healthy, full-blooded pit bull puppies.  On that day, there were 8 to 10 people in the first and second floors of the building.  Carl Sr. told police his name and that he owned the residence, and he was arrested and transported to the station.  Jantae and her mother were told to leave the apartment by the officers.  As they walked away they saw defendant and told him that the police had taken the dogs.

Defendant and Jantae then walked through the apartment and into a back alley, where they saw police officers playing with the three dogs.  When defendant asked police what they were going to do with the dogs, the police responded that they would make good police dogs.  When an argument ensued, police slammed defendant into the garage and a police car, injuring his hand.  The police then transported the defendant to the police station.

When Carl Sr. saw defendant at the police station, he noticed his son appeared to have been beaten.  After the day of the search, neither Carl Sr. nor Jantae ever saw any of the dogs again.  Carl Sr. also testified the parking tickets found by police in the second bedroom belonged to him and that defendant lived with his mother at 18 W. Grace.

ANALYSIS

I

Defendant contends that improperly admitted hearsay evidence denied his right of confrontation and denied him a fair trial.  Specifically, defendant alleges the trial court improperly admitted hearsay testimony regarding: (1) the contents of the search warrant; (2) the animal control receipt obtained by police; and (3) the substance of a conversation Officer Thoren had with Marilyn Williams.

The State responds that defendant waived these issues by failing to raise them in his posttrial motion, denying the trial court the opportunity to address any alleged errors.  We note that defense counsel, during trial, objected to the hearsay testimony regarding the search warrant, the animal control receipt and the conversation Officer Thoren had with Marilyn Williams.  However, in his motion for a new trial, defense counsel made no reference to the warrant, receipt or conversation.  In order to preserve an error for review, a defendant must both object at trial and raise the issue in a written, posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  However, Supreme Court Rule 615(a) provides that "plain errors" affecting substantial rights may be addressed on appeal even if defendant fails to object at trial or raise the issue in a posttrial motion.  134 Ill. 2d R. 615(a).  In 
People v. Thomas
, 178 Ill. 2d 215, 687 N.E.2d 892 (1997), the supreme court outlined the plain error doctrine as follows:

"The plain error doctrine is a limited exception to the waiver rule.  [Citation.] 'The doctrine of plain error is applied to remedy errors so plain and prejudicial that failure to object to them is not a waiver for purposes of appeal.' [Citation.]  A reviewing court will examine an issue not properly preserved under the plain error doctrine where the evidence is closely balanced or the alleged error is so fundamental that it denies defendant a fair trial.  [Citation.]"  
People v. Thomas
, 178 Ill. 2d at 235. 

First, we find the doctrine of plain error is applicable here as the evidence presented at trial was closely balanced.  In this case, the central issue for the jury to determine was whether the cocaine found in the second bedroom belonged to defendant.  

The State presented evidence that police officers saw someone running from the room and they identified that person as defendant.  However, according to testimony of the defendant's cousin and father, defendant was rarely at the apartment and did not live there.  In addition, the defense presented testimony that the first-floor windows out of which the police claimed defendant had jumped could not open wide enough to allow a person to pass through.  Corroborating this testimony was the fact that although police were posted at the perimeter of the building during the raid, they did not apprehend anyone trying to leave during the search.  Also, although there were parking tickets issued to "Carl Virgin" found in the room, there was no designation of "Jr." or "Sr." on the tickets.  Defendant's father testified that the tickets were his, not his son's, and that the bedroom was rented to Marilyn Williams. Finally, police found Marilyn Williams hiding in the bedroom where the cocaine was found when they executed the warrant.  While the evidence was sufficient to convict, we cannot say it was so overwhelming that no fair-minded jury could have voted to acquit defendant.  See 
People v. Singletary
, 273 Ill. App. 3d 1076, 652 N.E.2d 1333 (1995).  We find that the evidence was closely balanced, as there were a number of factual issues to resolve and testimony was presented in support of both the State's and defendant's version of events.  

Alternatively, we find the plain error doctrine applies as the cumulative effect of the improperly admitted hearsay evidence was of such a magnitude that it denied defendant a fair trial.  See 
People v. Rivera
, 277 Ill. App. 3d 811, 823, 661 N.E.2d 429 (1996).  These errors undermined the fundamental fairness of the trial.  First, the State elicited testimony over defense objection as to the actual contents of the warrant, rather than simply the fact the warrant existed.  In order to substantiate the identity issue, the State relied on the alleged hearsay evidence.  In addition, the State, over defense objection, relied on hearsay evidence that Marilyn Williams actually lived at an address other than 7215 S. Claremont, where the drugs and Marilyn Williams were found on the day the search warrant was executed.  Further, to disprove the defense theory the officers had stolen defendant's pit bull dogs and arrested him when he objected to this, the State, over defense objection, presented hearsay evidence from the Animal Control Center that only one mixed breed dog was confiscated. These errors, when considered together, undermined the fundamental fairness of the trial.

Accordingly, we find the plain error doctrine applies and we will address the defendant's arguments on appeal regarding the admission of the hearsay evidence.

II

Defendant first contends that the trial court improperly admitted hearsay evidence in the form of testimony regarding the contents of the search warrant.  
Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  
People v. Rogers
, 81 Ill. 2d 571, 411 N.E.2d 223 (1980).  The State correctly points out that evidence of the existence of a search warrant can be properly admitted for the limited purpose of explaining the conduct of police officers.  
People v. Rivera
, 182 Ill. App. 3d 33, 537 N.E.2d 924 (1989).  However, evidence of the contents of a search warrant may prejudice a defendant where the evidence is inadmissible hearsay.  
People v. Janis
, 240 Ill. App. 3d 805, 608 N.E.2d 359 (1992).  In argument made immediately before opening statement, the defense objected to the substantive admission of the description contained in the warrant, arguing  "that [the description] is in fact the blatant hearsay aspect of this case.  Anybody remotely, [the State] can describe one million people in the city and then infer that the description was to my client, is just the reason why we don't want it in."  The objection was overruled.

The State then referred to the contents of the warrant on several occasions, including opening statement and closing argument.  The State argued that defendant, not defendant's father, matched the description in the warrant.  These arguments, together with the testimony of Officers Thoren and Washington about the description in the search warrant, were used by the prosecution to prove that the defendant was the person who was in illegal possession of the cocaine because he fit the description of the offender described in the search warrant.  We find the admission of the contents of the warrant, specifically the description, was used by the State to prove defendant was the possessor of the illegal drugs.  Such use goes beyond an explanation of the investigatory procedure in this case.  
People v. Garcia
, 109 Ill. App. 3d 142, 440 N.E.2d 269 (1982); 
People v. Stout
, 110 Ill. App. 3d 830, 443 N.E.2d 19 (1982).

The State argues that the description in the search warrant was relevant to show why the police arrested defendant.   We agree that evidence of the existence of the search warrant explained the officers' authority to enter the apartment.  This evidence was properly admitted.   However, the description of the offender contained in the warrant was irrelevant in light of the police testimony that Virgin was the person the police observed fleeing from the bedroom where the drugs were found.  Both Officers Thoren and Washington testified that the search warrant described a male black, 18 to 20 years old, 5 feet 6 inches, about 135 pounds, and having a light complexion.  This testimony supported the prosecution's conclusion that Carl Jr., rather than Carl Sr., was the offender and thus the hearsay contents of the warrant were offered for the truth of the matter asserted. 

Further, in the opening statement, the prosecutor told the jury that when the police went to the residence, they were there to execute a search warrant.  The prosecution stated that police were looking for a person, and noted the description contained in the warrant: "they were looking for a male black, eighteen to twenty years old, light complexion, light to medium complexion.  He also was about 5'6" and about 135 pounds.  They were looking for *** cocaine."  The statement continued that on "that day of March 1995 [the police] found everything that they were looking for."  

In closing argument, the prosecution again relied on the search warrant to persuade the jury of defendant's guilt.  The prosecutor told the jury that the police arrested Carl Virgin, Jr., rather than Carl Virgin, Sr., and stated as follows:

   "Carl Virgin, Jr. is the guilty one here.  Remember that 

search warrant?  We have like a 30 year age difference between Carl Virgin, Sr. and that search warrant.  The search warrant matches Carl Virgin, Jr."

Citing 
People v. Canet
, 218 Ill. App. 3d 855, 578 N.E.2d 1146 (1991), the State argues that the warrant was "crucially intertwined with the defendant's arrest as to form part of one chain of relevant circumstances."  In 
Canet
, the police went to a building armed with a search warrant.  Outside the building, they met the defendant, who fit the description of the person named in the warrant.  He told the police his name was Alfonso, which was the name of the person described in the warrant.  The police told defendant that they had a warrant for the search of his person and the third-floor apartment.  The police searched the defendant and found drugs.  The police and the defendant went to the third-floor apartment, where the police gave the defendant a copy of the warrant.  Defendant read the warrant and pointed the police to the bedroom where the articles described in the warrant could be located.  In 
Canet
, it was necessary for the trier of fact to know the description of the person named in the warrant to understand why the police approached defendant outside of the building and searched his person.  It was also necessary for the trier of fact to know what articles were described in the warrant to understand the significance of defendant directing the police to a particular room containing those articles after reading the warrant.

In the instant case, it was only necessary for the jury to know that the police had the search warrant to understand why the police initially entered the apartment.  The police testified they recognized Virgin as the person they saw running from the bedroom where the drugs were located; therefore, it was not necessary for the jury to know the description contained in the warrant to understand why Virgin was arrested.  Under the circumstances in this case, there was direct evidence of why the police arrested the defendant.  The description contained in the search warrant was inadmissible hearsay used by the prosecution for the truth of the matter asserted, to prove defendant was the person who was in illegal possession of the cocaine because he matched the offender described in the search warrant.

III

Defendant next contends that Officer Thoren's testimony about the address of Marilyn Williams was inadmissible as hearsay.  Officer Thoren, over defense objection, testified that Marilyn Williams stated her home address was 2319 West 72nd Place, located in Chicago, Illinois.  This testimony supported the prosecution's theory that defendant was the tenant of the bedroom where the drugs were found.  It excluded Marilyn Williams as the tenant of the bedroom in which the police found her hiding when they discovered the drugs.  Further, the testimony regarding where Williams lived directly contradicted the testimony at trial by Carl Virgin, Sr., that Marilyn Williams rented the second-floor middle bedroom at 7215 South Claremont from him.  The State argues that Officer Thoren's testimony as to Williams' address is admissible based on its use for impeachment purposes.

    Defendant asserts that, in order to be used for impeachment purposes, the statement must be accepted for the truth of the matter asserted and, thus, it constitutes inadmissible hearsay.  Under the circumstances here, we agree.  The only reason the statement is relevant to the State's case is because it substantively establishes where Williams lived.  The statement at issue does not fall within one of the hearsay exceptions and is inadmissible as a matter of law.

When a witness is impeached with statements made by him or her out of court, the statements made out of court need not be considered for their truth.  The fact that the witness made different statements is used to undermine the credibility of the witness.   The evidence of self-contradiction is not used assertively, 
i.e
., we are not asked to accept either statement for its truth.  Rather, the contradictory statements by their inconsistency are offered to undermine the credibility of the witness.  3A J. Wigmore, Wigmore on Evidence §1018, at 995 (Chadbourn rev. ed. 1970).   

Where a witness is impeached by a contradictory statement made out of court by another person, as opposed to by the witness himself, then the out of court statement is offered for its truth in order to attack the credibility of the witness.  Unlike impeachment by self-

contradiction, in this type of impeachment "[i]t is not the contradiction but the truth of the contradicting assertion *** that constitutes the probative end."  3A J. Wigmore, Wigmore on Evidence §1000 at 957 (Chadbourn rev. ed. 1970).  The goal of the impeachment here is to prove that the contradictory statement made by Williams to Officer Thoren is substantively true.  It is used by the prosecution as substantative evidence to prove where Marilyn Williams resided.

By offering Officer Thoren's hearsay testimony regarding Marilyn Williams' out-of-court statement, the prosecution asked the jury to believe the truth of Williams' statement to prove that Carl Virgin, Sr., lied when he testified that Williams lived in the bedroom where the police recovered the cocaine.  Williams' statement was further offered to substantively prove that Williams lived at 2319 W. 72nd Place and to exclude her as the tenant of the bedroom in which she was hiding when the drugs were found.  Therefore the prosecution offered Williams' statement through the hearsay testimony of Officer Thoren for the truth of that statement, which was improper.  It is hearsay.  It would have no relevance if offered for any purpose other than the truth of the matter asserted.  
People v. Johnson
, 296 Ill. App. 3d 53, 64, 693 N.E.2d 1224 (1998).  The court improperly allowed Officer Thoren's hearsay testimony that Marilyn Williams told her she lived at 2319 W. 72nd Place.  The statement Marilyn Williams made to Officer Thoren is inadmissible because it is an extrajudicial statement offered for the truth of the matter asserted made out of court by a witness not subject to cross-examination.

IV

Defendant next contends that the trial court incorrectly admitted the receipt from animal control into evidence.  At trial, the animal control receipt was used by the prosecution to rebut the defendant's claim that the officers had told defendant that they were going to keep the dogs and train them to be police dogs.  Further, it was used to support the State's assertion that police removed only one mixed breed dog from the residence, rather than the three expensive pit bulls defendant claims were removed by police.  

      The defense objected to the admission of the animal control receipt on the basis that it was inadmissible hearsay.  Though the State contends that the receipt was properly admitted under the business record exception to the hearsay rule, defendant further objected that there was no proper foundation provided for the document.  

The foundation for admission of business records in Illinois is governed by the following:

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible evidence of such act, transaction, occurrence or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

      All other circumstances of the making of such writing 

or record, including lack of personal knowledge by the 

entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."  725 ILCS 5/115-5(a) (West 1996).

     For a proper foundation for the admission of business records, it is not necessary that the maker of the records testify or that the maker of the records be shown to be unavailable, nor is it necessary that the custodian of the records testify.  
Raithel v. Dustcutter, Inc.
, 261 Ill. App. 3d 904, 909, 634 N.E.2d 1163 (1994).  It is necessary that someone familiar with the business and its mode of operation testify at trial as to the manner in which the record was prepared.  
Raithel
, 261 Ill. App. 3d at 909.  Anyone familiar with the business and its procedures may testify as to business records, and the original entrant need not be a witness; compliance with the foundation requirements provides the indicia of reliability necessary for admission of records.  
People v. Morrow
, 256 Ill. App. 3d 392, 628 N.E.2d 550 (1993).

In the present case, there was no foundation testimony from anyone affiliated with the animal control unit or anyone familiar with its operations.  There was no evidence that the receipt was made during the regular course of the business or that it was the regular course of the business to make such receipts at the time of the transaction or contemporaneous with the event recorded on the receipt.  Moreover, there was no evidence that the witness who attempted to authenticate the receipt, Officer Washington, had any familiarity with the animal control center and its mode of operation.  

The rationale underlying the admissibility of business records is the recognition that businesses are motivated to keep routinely accurate records and that they are unlikely to falsify records kept in the ordinary course of business and upon which they depend.  
Morrow
, 256 Ill. App. 3d at 397.  However, the credibility of a business record depends on the regular, prompt, and systematic nature of the entry and the fact that it is relied on in the operation of the business. 
Morrow
, 256 Ill. App. 3d at 397.   It is the proper foundation which provides the indicia of reliability and allows this hearsay evidence to become admissible.  The State in the present case fulfilled none of the foundation requirements for establishing that the animal control receipt was an admissible business record.  

Defendant also argues that no business record is admissible if it "has been made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind."  725 ILCS 5/115-5(c)(2) (West 1996).

     Section 115-5(c) of the Code of Criminal Procedures of 1961 (725 ILCS 5/115-5(c) (West 1996)) modifies the exception to the hearsay rule recognizing that business records made in anticipation of litigation do not possess the same trustworthiness as records that are prepared at a time when there is no motivation to falsify. 
People v. Holowko
, 109 Ill. 2d 187, 486 N.E.2d 877 (1985).  Such records generally lack the earmarks of trustworthiness and reliability that are the true basis for the business records exception to the hearsay rule and that business records are assumed to ordinarily possess.

     However, the receipt from the animal control center is not a report or record or observation of a police officer or other law enforcement personnel.  Based on the totality of the circumstances, we cannot conclude that the receipt was made in anticipation or preparation of litigation.  The offense under investigation, namely, defendant's alleged possession and control of illegal drugs, had been concluded by his arrest before the receipt was ever produced by the animal control facility.

The foundation requirements for admission of a writing or record under the business records exception are that: (1) the writing or record was made as a memorandum or record of the event; (2) it was made in the regular course of business; and (3) it was the regular course of the business to make such record at the time of such transaction or within a reasonable time thereafter.  
In re N.W.
, 293 Ill. App. 3d 794, 688 N.E.2d 855 (1997); 725 ILCS 5/115-5 (West 1996). Additionally, this foundation must be established through testimony by someone familiar with the business and its mode of operation.  See 
Morrow
, 256 Ill. App. 3d at 397.

On retrial, if a proper foundation for admissibility under the business record exception is provided, the receipt may be admitted into evidence to rebut defendant's claim that the police arrested him because he attempted to interfere with the police officers' plan to steal the dogs and train them as police dogs.  Finally, if the receipt is properly admitted into evidence, the defense may cross-examine regarding the contents of the receipt.

We find that the cumulative effect of the admission of the inadmissible hearsay evidence served to deny defendant his right to confrontation and thus deprived him of a fair trial.  Accordingly, we reverse and remand this cause for a new trial.

V

We now address issues that may be pertinent on retrial.

Defendant next contends that the comments made by the trial court denied defendant a fair and impartial jury trial.  At the center of defendant's case was the theory that the police arrested defendant for interfering with the alleged police theft of defendant's dogs and subsequently charged defendant with possession of drugs as retaliation for his interference.  The judge recognized that, in light of this theory of defense, the defense should be allowed to explore the nature, extent and duration of the police contact with defendant's dogs.  We find that the conduct of the trial judge was proper.

However, on retrial, we note that defense should be allowed to explore what happened to the dog or dogs.  Questions regarding whether the police retrieved the dog from the animal control facility or whether the dog was destroyed are relevant to the defense theory. 

 VI  

Finally, defendant asserts that the trial court was not required to impose a consecutive sentence in the present case as such a term was not mandatory under either section 5-8-4(h) or 5-8-4(i) of the Unified Code of Corrections. 730 ILCS 5/5-8-4(h) (i) (West 1996). In the present case, defendant was arrested for possession of a controlled substance with intent to deliver on March 24, 1995.  There was a finding of no probable cause at a preliminary hearing and the bond posted by defendant was returned to his attorney.  Defendant was later indicted in the present case and pursuant to a notice mailed to his father's address appeared in court and was arraigned on June 23, 1995.  

Following the arraignment, the judge failed to set bond.  Defendant signed no bond slip indicating he was admitted to any bond.  The court did not order that defendant be released on his own recognizance, upon deposit of 10% of the bail, or by deposit of an amount of cash, stocks, bonds or real estate at the time he was arraigned.  Defendant was simply released into the community and continued to appear at subsequent proceedings of his own accord.  

Approximately three months later, on September 9, 1995, defendant was arrested for the separate offense of possession of controlled substance, case No. 95 CR 30548.  It was not until May 2, 1996, and only at the request of defense counsel, that a "D" bond was set at $50,000 in the instant offense.  

Though the State argues defendant was on an implied recognizance bond when he was arrested in September, the record is clear that defendant was not on bond at the time he committed the September offense.  We reject the State's contention that, following his arraignment, defendant was granted a recognizance bond which was "not directly stated" but "implied."  The State has cited no statutory authority in support of this contention.  We note that the appropriate procedure in the present case would have been for a bond hearing to be conducted following the indictment at the arraignment stage, as all parties would have been present and the conditions of bond could have been properly determined. 

 In the case at bar, the trial court appears to have imposed a consecutive sentence based on its interpretation of section 5-8-4(i) of the Unified Code of Corrections.  We disagree with this interpretation and find that, contrary to the trial court's finding, section 5-8-4(i) does not apply to the circumstances of defendant's situation.  This section reads as follows:

"If a person admitted to bail following conviction of a 

felony commits a separate felony while free on bond or if a 

person detained in a county jail facility or county detention facility following conviction of a felony commits a separate felony while in detention, any sentence following conviction of the separate felony shall be consecutive to that of the original sentence for which the defendant was on bond or detained."  730 ILCS 5/5-8-4(i)(West 1996). 

According to the record in the present case, there is no question that defendant was not on bond and thus could not be prosecuted for violation of bail bond.  Additionally, the court could enter no bail bond forfeiture against him had he failed to appear.  720 ILCS 5/32-10 (West 1996).  Most importantly, defendant was not "admitted to bail following conviction of a felony" and therefore section 5-8-4(i) is not applicable.

We further reject defendant's argument that he was not on "pretrial release" as contemplated by section 5-4-8(h) and therefore not subject to its mandatory consecutive sentencing requirements.  The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
People v. Woodard
, 175 Ill. 2d 435, 677 N.E.2d 935 (1997).  When the language is clear and unambiguous, courts may not read exceptions, limitations or conditions into the statute that the legislature did not express.  
People v. Wells
, 294 Ill. App. 3d 405, 690 N.E.2d 645 (1998).  

Section 5-8-4(h) reads as follows:

"If a person charged with a felony commits a separate 

felony while on pre-trial release or in pretrial detention in a county jail facility or a county detention facility, the 

sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the 

judgments of conviction are entered."  730 ILCS 5/5-8-4(h) (West 1996). 

The legislative intent of the above statute is clearly to protect the community by deterring felons who have been released into the community while awaiting trial from committing other felonies.  Moreover, the plain meaning of the term "pretrial release" applies to the defendant's situation at the time he committed the second felony.   Finally, section 5-4-8(h), unlike section 5-8-4(i), does not require a bond in order to be applicable.  While it may be true that, in most cases, a defendant on pretrial release is also on bond, there is nothing in subsection (h) which requires this be the case in order for consecutive sentencing to apply.  In this case, where defendant was apparently mistakenly not placed on bond but released pretrial, there is nothing in the language of the statute that would preclude the imposition of consecutive sentences under subsection (h).   For the above reasons, we find that, should defendant be convicted, he would be subject to the mandatory sentencing requirements of section 5-8-4(h).  

CONCLUSION

The evidence was sufficient to support a finding of guilt beyond a reasonable doubt and, therefore, defendant faces no risk of double jeopardy on retrial.  See 
People v. Cruz
, 162 Ill. 2d 314, 643 N.E.2d 636 (1994).  Because inadmissible hearsay evidence denied defendant a fair trial, we reverse the defendant's conviction and remand this cause for a new trial.

Reversed and remanded.

O'BRIEN, P.J., and TULLY, J., concur.