THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS C. HENDERSON, Defendant-Appellant.

Third District   No. 3—02—0005

Opinion filed February 13, 2003.—Modified on denial of rehearing March 12, 2003.

McDADE, P.J., dissenting.

Mark D. Fisher and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

William Poncin, State's Attorney, of Macomb (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

A jury found the defendant, Thomas C. Henderson, guilty of driving under the influence of alcohol (DUI), which is a Class A misdemeanor (625 ILCS 5/11—501(a)(2), (c) (West 1998)). He was sentenced to 30 days' incarceration in the county jail. The sentencing order also stated that he was to pay a $2,500 public defender fee (725 ILCS 5/113—3.1(b) (West 2000)). Under section 113—3.1(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113—3.1(b) (West 2000)), an order imposing a public defender fee may not exceed (1) $500 for a defendant charged with a misdemeanor; or (2) $2,500 if the defendant is appealing the conviction of any class offense. On appeal, the defendant argues that the trial court erred by (1) admitting doctor-ordered blood test results in evidence where the State failed to establish the blood sample's chain of custody; and (2) imposing a $2,500 rather than a $500 public defender fee. We affirm.

## BACKGROUND

At trial, deputy sheriff Justin R. Lundgren testified that at approximately 11:25 p.m. on March 12, 1999, he was called to the scene of a one-car accident on U.S. Highway 67, just outside the town of Industry. A car driven by the defendant had left the road at "Windmill Curve" and had "landed out in a field" more than 100 feet from the road. When Lundgren arrived at the accident scene, emergency personnel were working to extract the defendant from the vehicle, where he was "somewhat trapped." Lundgren spoke with the defendant, who "smelled of alcoholic beverage" and slurred his speech.

Eric Starbuck testified that, on the night of the accident, he was a paramedic for the McDonough District Hospital (MDH) in Macomb. Starbuck said that after he arrived at the crash site, he began to treat the defendant. He detected "an odor of alcohol" coming from the

defendant. Starbuck said that he drew a blood sample from the defendant in the ambulance under a standing order from the hospital's emergency room doctor. He testified that the ambulance arrived at the hospital with the defendant at 12:02 a.m. on March 13, 1999.

Starbuck stated that it is standard procedure for a patient's blood sample drawn in the field to accompany the patient in the ambulance. Once at the hospital, the blood sample is given to hospital staff, who label the sample to identify that it was collected from the patient. The sample is then taken by a staff member to the hospital laboratory.

Lundgren testified that he followed the ambulance to the hospital. While at the hospital, the defendant told Lundgren that "he had been drinking alcohol." Lundgren opined that the defendant was under the influence of alcohol. Lundgren asked the defendant if he would consent to have a blood sample taken. The defendant agreed. However, shortly thereafter, the hospital staff told Lundgren that the defendant needed to be transferred to another hospital because of a spinal injury. Lundgren did not know whether the hospital staff drew the sample that Lundgren had requested before the defendant was transported to the other hospital.

Dr. Arthur Thrasher testified that he was the emergency room doctor who treated the defendant at MDH. He stated that under his standing orders, four tubes of blood are drawn from a patient prior to the patient's arrival at the emergency room. Among other tests, a patient's blood sample is tested at the hospital lab for the presence of alcohol. The results of the blood tests then are printed on a lab report. The defendant's lab report was generated in the regular course of the hospital's business. The defendant's lab report, which was admitted in evidence over the defendant's objection, shows that the defendant's blood-alcohol content (BAC) was 0.19.

The hospital's lab report indicates that the patient's name was "HENDERSON, THOMAS C" and that the emergency room doctor was "THRASHER, ARTHUR." The report states that the blood sample used for the "ALCOHOL BLOOD" test was collected at 12:45 a.m. on March 13, 1999. The report shows that a sample used for a "CHEM 7" test also was collected at 12:45 a.m. The report states that a sample was collected for a "CBC" test at 8:37 a.m. The form authorizing the defendant's transfer to another hospital, however, indicates that he was transferred at 2:50 a.m. Thrasher could not explain how the blood sample for the "CBC" test could have been collected after the defendant was transferred to another hospital.

The defendant previously had filed a motion *in limine* to bar the State from introducing in evidence the hospital's lab report concerning the defendant's BAC. In the motion, the defendant argued that the

blood sample was requested by Lundgren (under section 11—501.2 of the Illinois Vehicle Code (625 ILCS 5/11—501.2 (West 1998))) rather than ordered by a doctor (under section 11—501.4 (625 ILCS 5/11—501.4 (West 1998))). At the hearing on the motion, the defendant contended that the blood sample must have been requested by Lundgren at the hospital and could not have been the blood sample drawn by Starbuck before the defendant arrived at the hospital. The defendant based this contention on the fact that the blood sample was collected at 12:45 a.m., which was after the defendant arrived at the hospital at 12:02 a.m.

At the hearing, Thrasher testified that the collection time on the lab report could have been either when the blood sample was drawn from the defendant's body or when the sample was drawn from the tube at the laboratory. He stated that the blood sample was ordered by him rather than requested by Lundgren because it was tested by the hospital's lab rather than being given to Lundgren and tested by a crime lab. The court denied the defendant's motion *in limine*, ruling that the lab report was not a result of Lundgren's request under section 11—501.2.

At the conclusion of the trial, the jury found the defendant guilty. The court imposed a 30-day jail sentence. The sentencing order, dated November 27, 2001, states that the defendant is to pay a $2,500 public defender fee. The record does not contain a transcript of the sentencing hearing or any other proceeding in which the trial judge determined the amount of the public defender fee. The defendant filed his notice of appeal on December 26, 2001.

## ANALYSIS

### I. Chain of Custody

The defendant argues that the trial court erred by admitting in evidence the lab report concerning the defendant's BAC when the State had not established a chain of custody for the blood sample on which the lab report was based.

■ In Illinois, a blood sample tested to determine a defendant's BAC may be taken from a defendant as a result of a request from a law enforcement officer (625 ILCS 5/11—501.2 (West 1998)), or as a result of a doctor's order during the regular course of providing emergency medical treatment (625 ILCS 5/11—501.4 (West 1998)). The results of tests conducted on blood under section 11—501.4 are admissible as a business record exception to the hearsay rule when each of the following criteria is met: (1) the tests were ordered in the regular course of providing emergency medical treatment and not at the request of a law enforcement officer; (2) the tests were performed

by the laboratory routinely used by the hospital; and (3) the results of the tests are admissible regardless of the time the records were prepared. 625 ILCS 5/11—501.4 (West 1998).

■ We are asked to determine whether the lab report was admissible in evidence. We review a trial court's evidentiary ruling for abuse of discretion. *People v. Human*, 331 Ill. App. 3d 809, 773 N.E.2d 4 (2002).

■ The defendant cites *People v. Ethridge*, 243 Ill. App. 3d 446, 610 N.E.2d 1305 (1993), for the proposition that under section 11—501.4, the State is required to show that the defendant's blood was the blood used for the test to determine BAC. The defendant and the dissent contend that under *Ethridge*, the State must establish a chain of custody for the blood sample that was used for the test. In *Ethridge*, the court considered whether the State was required to admit the blood sample as part of the foundation for admitting the test results. The court said:

> "Defendant cites no authority, and we find none, that requires the State to introduce the actual blood serum of defendant as part of the foundation for admissibility of the blood-test results under section 11—501.4. Rather, the foundational question presented is whether it was in fact defendant's blood that was tested and produced the result sought to be admitted at trial. Provided the State can show that it was defendant's blood that was used to determine defendant's BAC, then such BAC test results may be introduced under section 11—501.4 if the other criteria for admissibility set forth in that section are met." *Ethridge*, 243 Ill. App. 3d at 464, 610 N.E.2d at 1316.

We disagree with the defendant and the dissent that *Ethridge* requires the State to prove the chain of custody for the defendant's blood sample. In *Ethridge*, the defendant's argument concerned introducing the actual blood serum as a foundation to admitting the blood test results. The *Ethridge* court held that the State was not required to introduce the actual blood serum as a foundational matter. In *dicta*, the *Ethridge* court then stated that the usual foundation for evidence must be laid in contrast to the defendant's foundational argument. The usual foundational rules dictate that if the results of a blood test are to be used as evidence of a defendant's guilt, the State must show that it was the defendant's blood that was tested. The *Ethridge* court did not mention chain of custody considerations.

■ Our state legislature has determined that lab reports of hospital blood tests conducted in the regular course of providing emergency medical treatment are admissible in prosecutions for DUI under the business records exception to the hearsay rule. 625 ILCS 5/11—501.4

(West 1998). The foundation requirements for admission of a record under the business records exception are that (1) the record was made as a record of the event; (2) it was made in the regular course of business; and (3) it was the regular course of the business to make a record at the time of the event or within a reasonable time thereafter. Also, this foundation must be established through testimony by someone familiar with the business and its mode of operation. *People v. Virgin*, 302 Ill. App. 3d 438, 707 N.E.2d 97 (1998).

■ In this case, Thrasher was familiar with the hospital's business and its mode of operation. He testified that (1) the lab report was made as a record of the collection and testing of the defendant's blood by the hospital; (2) the report was made during the regular course of the hospital's business; and (3) it was the hospital's regular course of business to make such lab reports. The foundational requirements for a business record, as mentioned in the *Ethridge dicta*, were met. See *Ethridge*, 243 Ill. App. 3d at 464, 610 N.E.2d at 1316. Therefore, the lab report was admissible as a business record.

Neither the defendant nor the dissent asserts that the hospital's lab report was inadmissible as a business record. Instead, their argument is that to be admissible as a business record, the State must show the chain of custody of a blood sample that was in the hospital's custody and never in the State's custody. Neither the defendant nor the dissent has cited any authority for the proposition that the State must establish a chain of custody for an object described in a document admitted under the business record exception to the hearsay rule. This court's research has uncovered no authority for such a proposition.

■ Under case law, the State only must establish a chain of custody when a blood sample is drawn under section 11—501.2 at a law enforcement officer's request and is then immediately taken into the officer's custody. See 625 ILCS 5/11—501.2 (West 1998); *People v. Lach*, 302 Ill. App. 3d 587, 707 N.E.2d 144 (1998). In *Lach*, the defendant argued that the State failed to establish a chain of custody under section 11—501.4. The *Lach* court ruled that for BAC test results to be admissible, the State is only required to comply with the foundational provisions in the statute and that a chain of custody is not required. Neither the defendant nor the dissent mentions the holding of *Lach*.

An item described in a business record is, by definition, in the custody of the business that generated the record rather than in the State's custody. On the one hand, it is logically consistent to require the State to prove chain of custody under section 11—501.2 for a blood sample that is drawn in the presence of an officer and is continu-

ously in the State's custody once it is given to the officer by the physician. On the other hand, it would be logically absurd for us to require the State to prove chain of custody under section 11—501.4 for a blood sample that was continuously in a hospital's custody and never in the State's custody.

In the present case, the State complied with the provisions of section 11—501.4. The defendant's blood test was ordered in the regular course of emergency medical treatment and not requested by Lundgren or any other law enforcement officer. The test was performed at the hospital's own laboratory. The defendant's lab report was admissible as a business record regardless of the time that it was prepared. Therefore, the trial court did not abuse its discretion by admitting the lab report in evidence without the State establishing a chain of custody for the defendant's blood sample.

## II. Public Defender Fee

As part of the defendant's sentence, the trial court ordered the defendant to "reimburse McDonough County for Public Defender fees in the amount of $2,500." The defendant submits that the trial court erred by ordering him to pay a $2,500 rather than a $500 public defender fee. He contends that his public defender fee should be reduced to $500 because he was convicted of a misdemeanor. He argues that he was not appealing at the time the judge ordered the fee, and therefore, the judge was not authorized to order him to pay the $2,500 fee. The State submits that the defendant has not provided us with a record adequate to support his contention. We agree with the State.

■ "Whenever *** the court appoints counsel to represent a defendant, the court may order the defendant to pay to the clerk of the Circuit Court a reasonable sum to reimburse either the county or the State for such representation." 725 ILCS 5/113—3.1(a) (West 2000). "Any sum ordered paid under this Section may not exceed $500 for a defendant charged with a misdemeanor, $5,000 for a defendant charged with a felony, or $2,500 for a defendant who is appealing a conviction of any class offense." 725 ILCS 5/113—3.1(b) (West 2000).

■ As the appellant, the defendant bears the responsibility of presenting us with the record. *People v. Thurmond*, 317 Ill. App. 3d 1133, 741 N.E.2d 291 (2000). The lack of such a record from the trial court requires that we affirm issues that may depend on missing facts for their resolution. *People v. Scruggs*, 161 Ill. App. 3d 468, 514 N.E.2d 807 (1987). Absent an affirmative showing of error in the record, a trial judge is presumed to know the law and to apply it properly. *People v. Askew*, 273 Ill. App. 3d 798, 652 N.E.2d 1041 (1995).

■ In this case, the defendant was ordered to pay a $2,500 public

defender fee "to McDonough County." Under the plain language of the statute, the defendant could be ordered to pay the clerk of the McDonough County circuit court to reimburse the county or the State for the defendant's court-appointed representation.

The defendant's notice of appeal was filed within 30 days following the sentencing order. His notice of appeal is the first indication in the record that the defendant was appealing. However, the defendant has not supplied us with a record of the sentencing hearing in which the $2,500 public defender fee was imposed. Without a record of that hearing, we must presume that the trial judge knew that the defendant was appealing when the judge imposed the $2,500 fee because the judge is presumed to know and apply the law. See *Askew*, 273 Ill. App. 3d 798, 652 N.E.2d 1041. Furthermore, the defendant currently "is appealing," making the issue moot. See 725 ILCS 5/113—3.1(b) (West 2000). Therefore, we cannot say that the trial judge erred by ordering the defendant to pay a $2,500 public defender fee.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the McDonough County circuit court.

Affirmed.

SLATER, J., concurs.

PRESIDING JUSTICE McDADE, dissenting:

The majority appears to hold that as long as the three-pronged statutory requirement for admission of blood test results as a business record has been met, there is no requirement that the State prove that the blood which was tested was drawn from defendant. With all due respect, I find that decision to be logically and legally insupportable, and I dissent.

The record shows that McDonough District Hospital paramedic Eric Starbuck testified that, pursuant to a standing order from the hospital's emergency room doctor, he drew blood from defendant in the ambulance at the accident site. The ambulance arrived at the hospital at 12:02 a.m., so that blood had to have been drawn sometime between 11:25 p.m., when the crash occurred, and 12:02 a.m.

In his testimony, Dr. Arthur Thrasher, the emergency room doctor, confirmed his standing order that four tubes of blood be drawn prior to the patient's arrival at the emergency room. Upon arrival at the hospital, that blood is marked and subjected to a variety of tests, including one for the presence of alcohol. Dr. Thrasher also testified

that the blood which was the subject of the lab report had to have been taken pursuant to his order rather than Deputy Lundgren's request because it was tested by the hospital's lab. Dr. Thrasher did not testify that he ever ordered other blood to be drawn from defendant.

There is no lab test result purporting to be for blood collected or turned in and labeled prior to 12:45 a.m. There is also no evidence either that the test blood was that drawn earlier or that blood was drawn from the defendant again. This problem is compounded by the indication, *in the report*, that a CBC test sample was collected from defendant at 8:37 a.m.—five hours after his transfer to another hospital. In this confusing situation, there is no way to establish that the blood tested was actually defendant's blood without something in the nature of chain-of-custody testimony.

Defendant relies on *People v. Ethridge*, 243 Ill. App. 3d 446, 610 N.E.2d 1305 (1993), in which the court found that there is no requirement on the State to introduce the actual blood serum as part of the foundation for admissibility of the blood test results. "Rather, the foundational question presented is whether it was in fact defendant's blood that was tested and produced the result sought to be admitted at trial. *Provided the State can show that it was defendant's blood that was used to determine defendant's BAC*, then such BAC test results may be introduced under section 11—501.4 if the other criteria for admissibility set forth in that section are met." (Emphasis added.) *People v. Ethridge*, 243 Ill. App. 3d at 464, 610 N.E.2d at 1316.

The majority holds that *Ethridge's* requirement that the State show defendant's blood was used for the test is only *dicta*. Therefore, since the lab report *says* it is defendant's blood, that assertion should be accepted without any foundational showing of accuracy because the business record rule does not require it.

One wonders how comforted the majority would be by such fine legal distinctions if we were being convicted of DUI on the basis of tests conducted on blood possibly drawn from someone else.

Our responsibility is to determine, not whether it is possible that defendant committed the crime, but rather whether the State has proven him guilty beyond a reasonable doubt. I do not believe it has. I would reverse the conviction and I, therefore, dissent.