# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hutchison*, 2013 IL App (1st) 102332

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CATHERINE HUTCHISON, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-2332 |
| Filed | November 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Despite defendant's contentions that the trial court improperly admitted the hospital lab report showing her blood alcohol level as a business records exception to the hearsay rule and that the State failed to establish a sufficient chain of custody over the blood drawn from her in the hospital emergency room following an automobile accident, defendant's DUI conviction was upheld, since the evidence presented was sufficient to allow the trier of fact to infer that defendant's reported blood alcohol level was the result of testing of the blood taken from defendant by the emergency room phlebotomist, the State met the foundational requirements for the admissibility of the report of defendant's blood alcohol test, and the evidence was sufficient to support a finding that defendant was guilty beyond a reasonable doubt. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. TP-081-740/741, TP-303-478/479; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and S. Emily Hartman, all of
State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy
M. Watroba, and Yvette Loizon, Assistant State's Attorneys, of counsel),
for the People.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment
and opinion.

# OPINION

¶ 1        Following a bench trial, defendant Catherine Hutchison was found guilty of driving under
the influence of alcohol (DUI).[1] See 625 ILCS 5/11-501(a)(1) (West 2008). The trial court
sentenced her to 18 months of supervision. Defendant appeals, arguing that the trial court
improperly admitted the results of a lab report showing her blood alcohol level as a business
records exception to the hearsay rule and that the State did not prove her guilty beyond a
reasonable doubt because it failed establish a sufficient chain of custody over the blood
drawn from defendant.

¶ 2        We note that defendant has withdrawn her appeal with respect to issues three and four,
in which she claimed that admission of the report was inadmissible testimonial hearsay under
the confrontation clause (three) and that the statute under which the report was admitted is
unconstitutional as applied to defendant (four). For both of these issues, defendant requested
a new trial as relief and defendant has withdrawn these issues because she claims that she has
served her sentence and that appearing for a new trial would be "difficult" due to her physical
disabilities. As to her claim that the trial court improperly admitted the results of a lab report
showing her blood alcohol level as a business records exception to the hearsay rule,
defendant has withdrawn her request for the alternative remedy of a new trial. Defendant
maintains her appeal with respect to issues one and two in which she requested the remedy
of outright reversal.

¶ 3                                    BACKGROUND

¶ 4        On the morning of April 10, 2008, two vehicles were involved in a collision in Chicago,

_____

[1]The State spells defendant's name "Hutchinson" in its brief, while defendant spells it
"Hutchison." We adopt the spelling used by defendant.

Illinois. Michele Fischler, a paramedic for the Chicago fire department, responded to the scene of the accident. Fischler attended to defendant in her vehicle and discovered that she was responsive and breathing but that her legs were trapped under the vehicle's dashboard. Defendant was ultimately extracted from the vehicle, put in an ambulance and taken to Advocate Christ Medical Center (Christ Hospital). Fischler examined defendant on the way to the hospital and discovered that she had an open femur fracture. There was a heavy odor of alcohol emanating from defendant, and while Fischler was examining defendant, she discovered two bottles of alcohol inside defendant's coat. Fischler did not examine the bottles to determine if they were open. Fischler testified that in her experience as a paramedic and a bartender, defendant was under the influence of alcohol when she was pulled from the car accident.

¶ 5        Licensed practical nurse and phlebotomist Darlene Parker Little testified that she was working in the trauma room at Christ Hospital on the morning of April 10, 2008, when defendant was brought into the hospital by paramedics after a major motor vehicle accident. As to defendant's general condition at the time she was brought in, Parker Little described defendant as being "loud," "using profanity," "fighting" and "very disorientated." Parker Little was close to defendant and could smell alcohol on her breath. Parker Little's responsibility was to draw the "initial labs" from defendant, noting that the labs were "very important" as the defendant had a serious leg injury. Parker Little noted that the defendant had not been given any medications at the time of the blood draw.

¶ 6        Parker Little testified that "the trauma labs" were standard protocol and that "we draw for all traumas regardless of what kind of trauma you are in." She confirmed that it is the hospital's regular practice to draw blood from motor vehicle accident victims and that tests on that blood are ordered pursuant to providing emergency room treatment. Describing the protocol for drawing blood, Parker Little testified that she prepped the skin with the standard alcohol-free disinfectant used by Christ Hospital. After drawing the blood, she "check[ed] the ID band, of course, that's the first thing you always do" and labeled the blood "at the scene" with the defendant's "MR Number."

¶ 7        Parker Little further testified that a second nurse "must be present while [Parker Little was] drawing the blood" in order to confirm that it was "the correct patient and that everything was done correctly." She explained that "[e]very patient that comes in as a trauma is a Doe because we don't know who they are and they are given an MR Number." While Parker Little could not remember the exact "MR Number" with which she labeled the blood, she stated that the second nurse "initialed the blood and also verified it was the correct patient" against the defendant's identification band and that the Christ Hospital lab will not accept the blood unless this protocol was followed.

¶ 8        Parker Little testified that she then sent it "down to the [Christ Hospital] lab immediately" via the hospital tube system, similar to a bank drive-through. She indicated that Christ Hospital's lab is "the only lab we use," and that it was within the hospital. Parker Little stated that she was not present when the blood was opened and did not see it again after sending it to the lab. Parker Little testified that she took the blood around 3:30 a.m. and that she was not instructed by law enforcement personnel to draw defendant's blood.

¶ 9 Over defendant's repeated objections, the trial court allowed Parker Little to view a computer printout from Christ Hospital showing defendant's "Alcohol, Serum" level to be "188 mg/dL." Later expert testimony at trial established that defendant's whole blood alcohol concentration was "0.159 g/dL." When asked if "these labs [are] kept in the ordinary business records," Parker Little responded "[y]es, they are kept in the patient's file" on the hospital's computer system. Defendant objected to this statement claiming a lack of foundation. While Parker Little had worked for Christ Hospital for 12 years, she further testified that she did not know how the lab obtains the results, that she did not know the person who worked in the lab and that she did not know who maintains the computer system. However, she mentioned that Christ Hospital does not use paper charting. Parker Little also agreed that the report shown in court "fairly and accurately depict[ed] the results of the lab that [Parker Little] viewed after the blood was drawn."

¶ 10 Further testimony indicated that Parker Little took two total blood draws from defendant that morning, that the referenced lab results in her testimony were from the trauma labs, and that she never saw the results from the police DUI kit. This court notes that the State never entered the results from the police DUI kit into evidence.

¶ 11 ANALYSIS

¶ 12 I. Admissibility of Blood Test Results

¶ 13 Defendant first contends that the State failed to lay a sufficient foundation for the admission of the blood alcohol test results as a business records exception to the rule against hearsay. Defendant claims that the State introduced the results through the testimony of an emergency room phlebotomist "who had no knowledge of any aspect of the hospital's blood-testing or record-keeping process beyond drawing blood from a patient's arm." Defendant asserts that the phlebotomist was unable to affirm that the blood alcohol tests were done in the ordinary course of business and therefore admission of those results was an abuse of discretion.

¶ 14 A trial court's evidentiary ruling is reviewed for abuse of discretion. *People v. Olsen*, 388 Ill. App. 3d 704, 710 (2009). Defendant's argument also raises an issue of statutory construction, which is reviewed *de novo*. See *id.*

¶ 15 In this case, defendant's blood alcohol results were admitted under the business records exception to the rule against hearsay pursuant to section 11-501.4 of the Illinois Vehicle Code (the Vehicle Code) (625 ILCS 5/11-501.4 (West 2008)). Section 11-501.4 provides:

"(a) Notwithstanding any other provision of law, the results of blood tests performed for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, of an individual's blood conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11-501 of this Code or a similar provision of a local ordinance, *** when each of the following criteria are met:

(1) the chemical tests performed upon an individual's blood were ordered in the regular course of providing emergency medical treatment and not at the request of

-4-

law enforcement authorities;

   (2) the chemical tests performed upon an individual's blood were performed by the laboratory routinely used by the hospital; and

   (3) results of chemical tests performed upon an individual's blood are admissible into evidence regardless of the time that the records were prepared." 625 ILCS 5/11-501.4 (West 2008).

¶ 16   Illinois Rules of Evidence 803(6) provides that "records of regularly conducted activity" are not considered inadmissible hearsay where they constitute:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, but not including in criminal cases medical records." Ill. R. Evid. 803(6) (eff. Jan. 1, 2011).

¶ 17   Section 115-5(c)(1) of the Code of Criminal Procedure of 1963, which governs business records as evidence in criminal cases, provides:

"(c) No writing or record made in the regular course of any business shall become admissible as evidence by the application of this Section if:

(1) Such writing or record has been made by anyone in the regular course of any form of hospital or medical business[.]" 725 ILCS 5/115-5(c)(1) (West 2008).

¶ 18   Although medical records cannot normally be admitted as a business record in criminal cases, this court has recognized that through section 11-501.4 of the Vehicle Code, "[o]ur State legislature has determined that lab reports of hospital blood tests conducted in the regular course of providing emergency medical treatment are admissible in prosecutions for DUI under the business records exception to the hearsay rule." *People v. Henderson*, 336 Ill. App. 3d 915, 920-21 (2003). This court has also recognized that section 11-501.4 sets forth the specific foundational requirements for the admission of blood alcohol test results. *Olsen*, 388 Ill. App. 3d at 710; *People v. Lach*, 302 Ill. App. 3d 587, 593 (1998); *People v. Edmundson*, 247 Ill. App. 3d 738, 744 (1993). Of further note is that section 11-501.4 of the Vehicle Code eliminates the timeliness requirement of the general business records exception. See 625 ILCS 5/11-501.4 (West 2008) ("results of chemical tests performed upon an individual's blood are admissible into evidence regardless of the time that the records were prepared").

¶ 19   In this case, through Parker Little's testimony, the State satisfied the foundational requirements for the admissibility of the report of defendant's blood alcohol test under section 11-501.4 of the Vehicle Code. Parker Little's testimony established that the report was a record of defendant's blood alcohol test, that the record was made in the regular course of business, and that it was the regular course of the business to make such a record at a reasonable time after the event. Parker Little testified that the record shown to her in court

"fairly and accurately depict[ed] the results of the lab" and that the record was kept "in the patient's file" on the hospital's computer system. Further, she testified that she took the blood "around–3:30, 3:35, in between that time," which closely matches with the report.

¶ 20    Parker Little further testified that the trauma labs are standard protocol for all motor vehicle accident victims and are drawn for all traumas. She confirmed that it was the regular practice of the hospital to take and analyze the blood of all motor vehicle accident victims. Parker Little testified that the tests done on defendant's blood were ordered in the regular course of providing emergency room treatment and not at the request of law enforcement. Parker Little's testimony also established that the labs were analyzed at Christ Hospital's in-house lab, which routinely processed blood tests. In other cases in which the same testimony was offered, this court has held that the foundational requirements for the admissibility of blood test results were satisfied. See, *e.g.*, *Henderson*, 336 Ill. App. 3d at 922; *Lach*, 302 Ill. App. 3d at 594; *Olsen*, 388 Ill. App. 3d at 710-11. We reach the same conclusion in this case.

¶ 21    We disagree with defendant that Parker Little's testimony could not satisfy the foundational requirements because she lacked sufficient knowledge of the hospital's blood-testing or record-keeping procedures. Section 11-501.4 is clear in its requirements and the statute makes no mention of requiring familiarity with the actual making of the record. Moreover, in order to lay a proper foundation for the admission of business records generally, it is not necessary for the maker of the records or the custodian of the records to testify. *People v. Virgin*, 302 Ill. App. 3d 438, 449-50 (1998). Instead, anyone familiar with the business and its procedures may testify to the business record and compliance with the foundational requirements provides the indicia of reliability necessary for admission of the records. *Id.* For example, in *Henderson*, 336 Ill. App. 3d at 921, the court found that an emergency room physician who provided testimony very similar to Parker Little's was "familiar with the [hospital's] business and its mode of operation," and was qualified to testify to the foundational requirements of a business record. In *Lach*, 302 Ill. App. 3d at 590, the foundational testimony was provided by the staff nurse who initially treated the defendant. In *Olsen*, 388 Ill. App. 3d at 710, the court rejected an argument that for a blood test result to be admitted under the statute, a "physician, nurse or other person with actual knowledge of routine emergency room procedures and the treatment of the patient/defendant" had to provide foundational testimony. (Internal quotation marks omitted.) The court stated that the statute set forth the foundational requirements and that the only question was whether the evidence presented satisfied that standard. *Id.*

¶ 22    In this case, Parker Little was qualified to provide the necessary foundational testimony for the admission of defendant's blood alcohol report. She was familiar with the hospital and its mode of operation and was able to testify to the hospital's regular emergency room procedures with respect to the taking of blood and the ordering of blood tests.

¶ 23    Defendant also claims that it is unclear if the "standard labs" described by Parker Little include blood alcohol levels by default. Defendant's claim is without merit. Parker Little's testimony as a whole was sufficient for the trier of fact to infer not only that blood was drawn and blood tests were ordered in the ordinary course of providing emergency room treatment on all motor vehicle accident victims, but also that the report of such tests included the victim's blood alcohol level. This inference is supported by the fact that although Parker

Little had no communication with the individual in the lab who ran the tests, the report of those tests contained defendant's blood alcohol level.

¶ 24     We also reject defendant's claim, made at oral arguments, that section 11-501.4 and the case law interpreting it does not survive the subsequent enactment of the Illinois Rules of Evidence, specifically Illinois Rule of Evidence 803(6) (eff. Jan. 1, 2011). This argument mischaracterizes the purpose and effect of the enactment of the Illinois Rules of Evidence, which became effective on January 1, 2011. With certain exceptions not relevant here, the enactment of the Illinois Rules of Evidence accomplished a codification of existing Illinois law. The committee comments accompanying the Illinois Rules of Evidence bear this out. Specifically, the committee stated:

> "It is important to note that the Illinois Rules of Evidence are not intended to abrogate or supersede any current statutory rules of evidence. The Committee sought to avoid in all instances affecting the validity of any existing statutes promulgated by the Illinois legislature." Illinois Rules of Evidence, Committee Commentary.

We find that the statutory provision allowing the introduction of medical records in the prosecution of DUI cases promulgated in section 11-501.4 survives the enactment of the Illinois Rules of Evidence and is not affected or modified thereby.

¶ 25                                    II. Sufficiency of the Evidence

¶ 26     Defendant also contends that the State did not prove her guilty beyond a reasonable doubt because it failed to establish a sufficient chain of custody over the blood drawn from her at the hospital. Defendant claims that the State failed to link the blood sample taken in the emergency room to the lab results that were admitted at her trial. Defendant asserts that the State did not introduce evidence of the unique identifier used to represent defendant that might have linked her to the lab results.

¶ 27     When a defendant challenges the sufficiency of the evidence to sustain his conviction, the reviewing court must determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). A criminal conviction will not be set aside on appeal unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

¶ 28     The purpose of establishing a chain of custody is to connect the object to the defendant and the crime and to negate the possibility of tampering or substitution and the rule is therefore applicable to evidence that is easily subject to tampering or substitution. *Lach*, 302 Ill. App. 3d at 593. Moreover:

> "The chain of custody must be of sufficient completeness to render it improbable that the item has been tampered with, exchanged or contaminated. To establish a sufficient chain of custody, the State need not exclude every possibility of tampering. Rather, the State need only show that it took reasonably protective measures after the substance was

seized, and that it was probable the evidence was not changed in any important respect or substituted. Unless defendant provides actual evidence of tampering or substitution, the State need only establish the stated probability, and any deficiencies go to the weight and not the admissibility of the evidence." *Id.* at 594.

¶ 29   In *Lach*, the defendant argued that the State failed to establish a chain of custody under section 11-501.4 of the Vehicle Code. The court held that for blood alcohol test results to be admissible, the State is only required to comply with the foundational requirements of the statute and a chain of custody is not required. *Id.* The court reasoned:

"The purpose of section 11-501.4 is to insure the reliability and integrity of the test results conducted on a person charged with driving under the influence. By complying with the statute, the State demonstrates that reasonably protective measures have been taken to ensure that the blood taken from defendant and tested in the hospital lab was not changed or substituted." *Id.*

¶ 30   Likewise, in *Henderson*, 336 Ill. App. 3d at 921, the court recognized the holding in *Lach* and observed that the State is only required to establish a chain of custody when blood is drawn under section 11-501.2 of the Vehicle Code at a law enforcement officer's request and is then immediately taken into the officer's custody. See 625 ILCS 5/11-501.2 (West 2008). As relevant to this appeal, the court then observed:

"On the one hand, it is logically consistent to require the State to prove chain of custody under section 11-501.2 for a blood sample that is drawn in the presence of an officer and is continuously in the State's custody once it is given to the officer by the physician. On the other hand, it would be logically absurd for us to require the State to prove chain of custody under section 11-501.4 for a blood sample that was continuously in a hospital's custody and never in the State's custody." *Henderson*, 336 Ill. App. 3d at 921-22.

¶ 31   In this case too, as we have already found, the State introduced sufficient evidence through Parker Little's testimony to satisfy the foundational requirements for the admission of the report of defendant's blood test results. The State therefore made its *prima facie* case by demonstrating that reasonably protective measures were taken to ensure that the blood taken from defendant was the same blood tested by the lab and represented in the report. See *Lach*, 302 Ill. App. 3d at 594. Accordingly, all of the alleged deficiencies in the chain of custody pointed to by defendant, such as Parker Little being unable to remember defendant's "MR" number, go to the weight and not the admissibility of the blood test result. See *id.* Moreover, after the State made its *prima facie* case, the burden shifted to defendant to produce "evidence of actual tampering, alteration or substitution." See *id.* Defendant produced no such evidence in this case.

¶ 32   Defendant claims that the chain of custody was deficient because Parker Little could not remember the exact "MR Number" approximately two years after the incident. First, that Parker Little did not remember the MR goes only to the weight of the evidence. Second, there was sufficient evidence for the trier of fact to infer that the blood taken from defendant was the same blood tested by the lab. Parker Little's testimony as to the procedures required by Christ Hospital, including the requirement that a second nurse verify the sample against the patient's ID band and the requirements of dual-labeling for the testing lab to accept the

sample showed "reasonably protective measures" were employed. Parker Little also specifically testified that after she took defendant's blood, she checked defendant's band, which contained her "MR" number, and that she labeled the blood with defendant's MR number. She also testified that a second nurse was present and initialed the blood to verify that it came from defendant.

¶ 33    We reject defendant's claim made at oral argument that the holdings of *Lach* and *Henderson* are no longer viable after the Illinois Supreme Court's decision in *People v. Woods*, 214 Ill. 2d 455, 467 (2005).

¶ 34    In *Woods*, the court considered a challenge to the chain of custody over suspected narcotics which police observed the defendant selling to passing motorists. *Id.* at 459-60. The defendant claimed that the State failed to prove him guilty of possession of a controlled substance beyond a reasonable doubt because the State failed to establish a sufficient chain of custody for the recovered narcotics. The court noted that in cases where a defendant is accused of a narcotics violation, the State bears the burden of establishing a *prima facie* case showing a chain of custody that is sufficiently complete to make it improbable that the narcotics have been subject to tampering or accidental substitution. *Id.* at 467. "The State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist." *Id.* " 'Once the State has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence.' " *People v. Woods*, 214 Ill. 2d 455, 467 (2005) (quoting *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994)). Once the State makes a *prima facie* case showing that the chain of custody was sufficiently complete, "the burden then shifts to the defendant to produce evidence of actual tampering, alteration or substitution." *Id.* at 468.

¶ 35    The defendant in *Woods* stipulated to the testimony of a chemist at trial and the issue was whether the defendant thereby waived his challenge to the sufficiency of the chain of custody. Our supreme court held that a challenge to the chain of custody of an alleged controlled substance is properly considered an attack on the admissibility of the evidence, rather than a claim against its sufficiency to uphold a conviction, and is therefore subject to the ordinary rules of waiver. *Id.* at 471-73. Thus, the court found that the defendant waived his challenge to the chain of custody by entering into the stipulation. *Id.* at 473.

¶ 36    We find *Woods* to be inapplicable to this case as *Woods* concerned the admission of results of testing on a controlled substance under the general rules of authenticity and foundation. Here, we are concerned with the requirements for the admissibility of blood test results in DUI prosecutions that is specifically provided for in section 11-504.1 of the Vehicle Code. Further, even if *Woods* were applicable, it would not change our decision in this case. Under *Woods*, the State must show that reasonable protective measures were taken so as to make it improbable that the substance at issue was subject to tampering or substitution. Here, by satisfying the requirements of section 11-501.4, the State demonstrated that reasonably protective measures were taken to ensure that the blood taken from defendant and tested in the hospital lab was not changed or substituted. See *Lach*, 302 Ill. App. 3d at 594. The State thereby met its burden of establishing the probability that the evidence was

not compromised. The burden then shifted to defendant, who did not produce any actual evidence of tampering, alteration or substitution. As a result, any alleged deficiencies in the chain of custody went to the weight and not the admissibility of the evidence in question.

¶ 37   Defendant raises numerous other minor claims against the evidence presented at trial. These include that the State did not introduce evidence that the machine that tested the blood was working properly and that the State failed to prove that the blood serum on the lab report that Parker Little read in her testimony came from the blood drawn on the night of the incident. Defendant further claims that the State did not introduce the entire 114-page lab report or any evidence allowing anyone reading the report "to decipher it." As previously noted, these claims all go to the weight of the evidence and not its admissibility. It is well settled that the credibility of witnesses, the weight of the evidence and the resolution of any conflicts in the evidence are matters for the trier of fact to resolve, and this court does not retry the defendant or substitute its judgment for that of the trier of fact on those points. *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

¶ 38   Further, under section 11-501.4 of the Vehicle Code, "the State need not provide any evidence of the appropriateness of the test procedures or the working condition of the machinery used." *People v. Edmundson*, 247 Ill. App. 3d 738, 744 (1993). Moreover, it appears that the report submitted was a summary report of memorialized computer data, printed after the fact for use during trial. The statute clearly allows that "results of chemical tests performed upon an individual's blood are admissible into evidence regardless of the time that the records were prepared." 625 ILCS 5/11-501.4(a)(3) (West 2008). Parker Little also testified that the report "fairly and accurately depict[ed] the results of the lab that [Parker Little] viewed after the blood was drawn." The evidence presented was sufficient for the trier of fact to infer that the blood alcohol level contained in the report and testified to at trial by Parker Little was the result of testing done on the blood taken from defendant in the emergency room. The evidence presented at trial was sufficient to find defendant guilty beyond a reasonable doubt.

¶ 39   For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 40   Affirmed.