2019 IL App (1st) 180002-U

No. 1-18-0002

Order filed November 27, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 DV 75109 |
| | ) | |
| FIRMIN SENGA, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for domestic battery is affirmed over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Firmin Senga was convicted of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)) and sentenced to 12 months of conditional discharge. On appeal, defendant contends that his conviction for domestic battery should be reduced to reckless conduct

because the State failed to prove beyond a reasonable doubt that he knowingly caused bodily harm to the victim. We affirm.

¶ 3 Defendant was charged by misdemeanor complaint with domestic battery.[1] Defendant waived his right to a jury trial and the case proceeded to a bench trial.

¶ 4 Agnieszka Senga (Senga) testified that on July 9, 2017, she resided with defendant, who was her husband, and their five-year-old daughter C.S. in an apartment on West Randolph Street. Senga had resided there since 2009. At approximately 3:30 p.m., she was in the kitchen area of the apartment, defendant was in the bedroom, and C.S. was watching television. As Senga was in the bedroom putting laundry away, "[defendant] decided to punish [C.S.]" Senga heard C.S. screaming and ran to her. She saw C.S.'s "hands—forearm was red" and she was "scared." Senga told defendant, who was standing in front of C.S., to stop what he was doing because he was hurting C.S. Defendant turned his attention to Senga and began arguing with her. As he did, Senga picked up C.S. and ran to the bedroom. Defendant ran after Senga and, as she tried to close the bedroom door, he held the door and grabbed her forearm. She stated that defendant "pulled [her] in and pushed [her] through the room." Senga, who was still holding C.S. in her arms, hit the side of a dresser with her right arm, her left arm hit the side of the bed, and she fell to the floor. She jumped up, closed the door to the bedroom because she saw "[defendant] coming," and called the police. Defendant knocked on the bedroom door and said "I'm leaving, I'm leaving."

¶ 5 Senga testified that, after the altercation, she experienced "really bad pain" to both of her arms. She took photos of her arms after the police left her apartment and over the next several

_____

[1] Defendant was initially charged with domestic battery under section 12-3.2(a)(2) of the Criminal Code of 2012, but the State amended the complaint to reflect a charge under section 12-3.2(a)(1) (720 ILCS 5/12-3.2(a)(1) (West 2016)).

days. The State showed Senga seven photos and she identified the photos she took of her injuries. The photos depicted the front and back of both of Senga's arms. She identified bruises to the front of her arms in three of the photos. She explained that these bruises were caused by defendant when he grabbed her. She also identified bruises to the sides and back of her arms in six of the photos.

¶ 6    On cross-examination, Senga testified that there is a specific corner in the apartment called "the calm down corner" where C.S. goes when she is being punished. Senga acknowledged that she had called the police on a previous occasion when she believed defendant was "overdoing the discipline." When Senga heard C.S. screaming on the date in question, she saw defendant pushing C.S. towards the wall and squeezing her hands. Senga saw that C.S. was hurt by the look on her face and how she reacted. Senga also saw C.S. push defendant away. Senga told defendant that he was hurting C.S. and he replied "I know what I'm doing." She asked defendant to stop but he turned his back to her and prevented her from reaching C.S. Senga stood behind defendant and tried to grab C.S. When defendant turned his attention to Senga, C.S was able to free herself and run to Senga. Senga picked up C.S. and ran to the bedroom. She stated that defendant appeared "very angry" to the point that she felt "scared and threatened." She also explained that defendant's movement "was aggressive." As Senga tried to close the bedroom door, defendant pulled it back. Senga was scared that defendant was going to "hurt" her and C.S. She ran into the bedroom because she was afraid defendant was going to hit her. Senga told defendant that she wanted him to leave. After the altercation, Senga went to the hospital with her mother and C.S.

¶ 7    Senga acknowledged that defendant does not hurt her physically, but he had previously been "threatening with his behavior." She testified that she was scared of defendant. At the time

of her testimony, Senga and defendant were in the process of a divorce. Senga testified she wanted both her and C.S. to be safe.

¶ 8    Chicago police officer Ricardo Teneyuque testified that on July 9, 2017, at approximately 4:30 p.m., he responded to a call of a domestic battery. When he arrived, he spoke to Senga. Teneyuque noticed Senga had "fresh bruises" to her arm and was "upset and crying." On cross-examination, Teneyuque testified Senga refused medical treatment.

¶ 9    The State introduced into evidence photographs of Senga's bruises. Defendant's motion for a directed finding was denied.

¶ 10    Defendant testified that he has been married to Senga for seven years and they have a six-year-old daughter, C.S. About 3:30 p.m., on July 9, 2017, defendant was in his apartment with Senga and C.S. Defendant asked C.S. a question and waited for a response. Because C.S. did not respond, defendant asked her again. When she did not respond for a third time, defendant told her that "when somebody speaks to you, the least you can do is to answer, say yes, say no, just say something[.]" Because C.S. continued to ignore him, he told her she was going to the calm down corner. Defendant stood up, grabbed C.S., and attempted to take her to the corner. C.S. started screaming and kicking heavily. Defendant tried to calm C.S. and move her to the corner. As defendant was placing C.S. in the corner, Senga "stormed out" of the bedroom and tried to get C.S. away from him. Senga stood behind him and, with her hand, tried to insert herself between him and C.S. The pair engaged in "a physical tussle." During the struggle, defendant tried to hold C.S., who was kicking and screaming, while Senga tried to pull her away. Defendant testified "there was a lot of commotion" and during that commotion he pushed Senga. He could not recall specifically how he pushed her, but stated that he pushed her and she fell onto the shelves. He did

not chase after Senga. She appeared to be "upset" and "angry." After Senga and C.S. fell, defendant "realized it was getting too physical," and left the apartment.

¶ 11    On cross-examination, defendant testified he was upset with C.S. because she was ignoring his question. He was upset with Senga because she was trying to take C.S. away from him. In response to a question posed by the court, defendant testified that when he pushed Senga, his hand or elbow made contact with her hand.

¶ 12    The court found defendant guilty of domestic battery. In announcing its ruling, the court noted that Senga was credible and defendant was incredible. The court also noted that "[Senga] was grabbed with force and was pushed with great force for the level of bruising that was indicated in State's Exhibit number 7, State's Exhibit number 1, and State's Exhibit number 4. There is deep bruising to [Senga]. This is not consistent with the demonstration by the defendant where he pushes off with one arm."

¶ 13    Defendant's motion for new trial was denied. The court sentenced defendant to one year of conditional discharge with domestic violence and parenting classes.

¶ 14    On appeal, defendant challenges the sufficiency of the evidence to sustain his domestic battery conviction. He argues the State never proved and the court never specifically found that he knowingly caused bodily harm to Senga. Defendant asks this court to reverse his conviction for domestic battery or alternatively reduce it to reckless conduct.

¶ 15    The standard of review on a challenge to the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler,* 226 Ill. 2d 92, 114 (2007). This standard is applicable in all criminal cases regardless whether the

evidence is direct or circumstantial. *People v. Herring,* 324 Ill. App. 3d 458, 460 (2001); *People v. Campbell,* 146 Ill. 2d 363, 374-75 (1992). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Hutchinson,* 2013 IL App (1st) 102332 ¶ 27; *People v. Ortiz,* 196 Ill. 2d 236, 259 (2001). When considering the sufficiency of the evidence, it is not the reviewing court's duty to retry the defendant. *People v. Beauchamp,* 241 Ill. 2d 1, 8 (2011); *People v. Collins,* 106 Ill. 2d 237, 261 (1985). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). A reviewing court will only reverse a criminal conviction when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *Beauchamp,* 241 Ill. 2d at 8; *People v. Collins,* 214 Ill. 2d 206, 217 (2005).

¶ 16    In this case, defendant was found guilty of domestic battery. In order to sustain defendant's conviction, the State was required to prove beyond a reasonable doubt that he knowingly without legal justification by any means causes bodily harm to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2016). It is uncontested that Senga was a family or household member. Here, defendant only challenges the State's evidence that he knowingly caused bodily harm to Senga. He asserts that his conduct at most demonstrates that he acted recklessly.

¶ 17    A person acts knowingly if he "is consciously aware that the result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2016); *People v. Steele*, 2014 IL App (1st) 121452, ¶ 23. A person acts recklessly if he "consciously disregards a substantial and unjustifiable risk that *** a result will follow." 720 ILCS 5/4-6 (West 2016); *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 43. "Recklessness is a 'less-culpable mental state than knowledge,' and evidence

of recklessness is insufficient to prove that a person acted knowingly." *Lattimore*, 2011 IL App (1st) 093238, ¶ 43 (quoting *People v. Fornear*, 176 Ill. 2d 523, 531 (1997)). Moreover, "[w]hether a person acted knowingly with respect to bodily harm resulting from one's actions is due to its very nature, often proved by circumstantial evidence, rather than direct proof." *People v. Hall*, 273 Ill. App. 3d 838, 842 (1995). "It is not necessary that the trier of fact find beyond a reasonable doubt as to each link on the chain of circumstances. Rather, the trier of fact must find only that the evidence taken together supports a finding of the defendant's guilt beyond a reasonable doubt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 18    After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have concluded that defendant knowingly caused bodily harm to Senga. The record shows that as defendant attempted to discipline C.S., he and Senga engaged in a physical struggle. Defendant testified he was upset with C.S. because she was ignoring his question and he was upset with Senga because she was trying to take C.S. away from him. Senga stated that defendant appeared "very angry" to the point that she felt "scared and threatened." She also explained that defendant's movement "was aggressive" and that she was scared he was going to hurt her and C.S. She ran into the bedroom because she was afraid defendant was going to hit her. As Senga tried to close the bedroom door, defendant pulled it back. He grabbed Senga by the arm, pulled her forward then pushed her back, causing her to fall between the dresser and bed injuring her arms in the process. Senga testified she received bruises to her arms as a result of defendant grabbing and pushing her, and her falling into the bedroom furniture. The State presented photographic evidence of the bruising and Officer Teneyuque testified he observed fresh bruising

to Senga's arms. Defendant admitted pushing Senga and demonstrated his actions for the court. Defendant decided to leave the apartment when he believed it was "getting too physical."

¶ 19    Given this evidence, a rational trier of fact could find defendant acted knowingly *i.e.,* was consciously aware his conduct was certain to cause bodily harm to Senga. Stated differently, the evidence presented was not so improbable, unsatisfactory or inconclusive to justify a reasonable doubt as to defendant's guilt. *Beauchamp,* 241 Ill. 2d at 8; *Collins,* 214 Ill. 2d at 217.

¶ 20    In reaching this conclusion, we are not persuaded by defendant's argument that he did not intend to hurt Senga, but only acted recklessly because he lost his balance and pushed her away. In support of this argument, defendant relies on *People v. Lane*, 2017 IL App (1st) 151988, which we find readily distinguishable. Here, unlike in *Lane*, the issue is not whether the court erred in finding defendant guilty of the uncharged offense of reckless conduct because that offense is not a lesser-included offense of domestic battery. Rather, the issue at bar is whether the evidence presented supported the trier of fact's conclusion that defendant was guilty of domestic battery *i.e.*, that he knowingly caused bodily harm to Senga. As mentioned, in resolving this matter in favor of the State, the court found Senga to be credible and defendant not credible. In addition, the court specifically noted that Senga's injuries were not consistent with defendant's version of events.

¶ 21    In light of this record, defendant's arguments are essentially asking us to reweigh the evidence in his favor and substitute our judgment for that of the trier of fact. This we cannot do. It was the responsibility of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony, and to resolve any inconsistencies and conflicts in the evidence presented. See *Hutchinson,* 2013 IL App (1st) 102332 ¶ 27; *Ortiz,* 196 Ill. 2d at 259. Given its ruling, the court found Senga credible and resolved the complained of inconsistencies in the

evidence in favor of the State. In doing so, the trier of fact is not required to disregard the inferences that flow from the evidence or search out all possible explanations consistent with a defendant's innocence and raise them to a level of reasonable doubt. *People v. Alvarez,* 2012 IL App (1st) 092119, ¶ 51. As mentioned, a defendant's conviction will be overturned only if the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of defendant's guilt. *Beauchamp,* 241 Ill. 2d at 8. This is not one of those cases.

¶ 22    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 23    Affirmed.